UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

ROSCOE BENTON, III
and DESI NAJUANA BENTON,
Debtors.
_____/

Case No. 09-36642-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

OPINION DENYING DEBTORS' MOTION TO VOID BANKRUPTCY CASE
AND DENYING DEBTORS' SUPPLEMENTAL MOTION TO STRIKE SCHEDULES A-J
AND SUMMARY OF SCHEDULES FILED ON DECEMBER 22, 2009,
AND TO DETERMINE BANKRUPTCY CASE IS DISMISSED
NUNC PRO TUNC PURSUANT TO 11 U.S.C. § 521(i)(1)

Introduction

Because no one can produce an original "wet ink" signature of the Debtors' Chapter 13 Petition, Declaration Concerning Debtors' Schedules, or Declaration Under Penalty of Perjury by Individual Debtors for the Debtors' Statement of Financial Affairs filed with the Court in December of 2009, the Debtors request that this Court void their Chapter 7 case, strike certain papers filed with the Court, and dismiss their Chapter 7 case nunc pro tunc. The United States Trustee and the Chapter 7 Trustee, Samuel Sweet, object to the Debtors' requests for relief. For the reasons stated in this Opinion, the Court denies the Debtors' requests for relief.

The Court held evidentiary hearings regarding the Debtors' Motions on September 22, 2015, October 5, 2015, and October 6, 2015. Closing arguments were held on December 8, 2015, and the Court took this matter under advisement. After hearing the testimony of the witnesses at the evidentiary hearing, reviewing the admitted exhibits, and reviewing papers filed with the Court, the Court makes the following findings of fact.

Findings of Fact

1

A Chapter 13 Petition for the Debtors was filed with the Court on December 14, 2009. This Petition was filed by Melissa DiGiamberdine, an associate of Henry Sefcovic. Mr. Sefcovic knew Mr. Benton because he represented Mr. Benton in a prior bankruptcy. The Debtors believed they needed bankruptcy protection because of a pending action by a land contract vendor in which the Debtors were the vendees. A judgment entered against the Debtors and in favor of the vendor stated a deadline of December 15, 2009, for the Debtors to vacate their home, which was the subject matter of the land contract. The Debtors did not want to lose their home, so Mr. Benton contacted Mr. Sefcovic and the Bentons met with Mr. Sefcovic on December 8, 2009. At this meeting, it was agreed that the Bentons would need to file a Chapter 13 Petition and Mr. Sefcovic began work on a strategy to allow the Debtors to keep their home and repay their land contract vendor. To that end, Mr. Sefcovic began preparing certain documents as early as December 8, 2009. As he needed additional information from the Debtors, Mr. Sefcovic did not have complete Schedules or a Statement of Financial Affairs prepared when he met with Mr. Benton on December 8, 2009. Subsequently, however, a Voluntary Petition was filed with the Court on December 14, 2009, which included a Declaration Concerning Debtors' Schedules. These papers contained the name of each Debtor with the designation "/s/". The Declaration Concerning Debtors' Schedules is out of place in that the Debtors' Schedules were not filed with the Court until December 22, 2009, and this Declaration was missing from the Schedules. The Statement of Financial Affairs filed on December 22, 2009, did contain a Declaration with the same designation "/s/". Each Debtor also filed a Certificate of Budget and Credit Counseling taken by the Debtors on December 14, 2009.

The Chapter 13 Trustee filed a Motion to Dismiss on January 20, 2010, and the first meeting of creditors of the Debtors was held on January 26, 2010. Relevant portions of that transcript

include:

. . .

THE TRUSTEE: They did. Okay. We have reviewed driver's license and Social Security information for Mr. and Mrs. Benton. The information provided matches the information in the file. Would you raise your right hands, please.

ROSCOE AND DESI BENTON, DEBTORS, SWORN

BY THE TRUSTEE:
Q. Ma'am, would you state your name.
A. (Mrs. Benton) Desi Benton.
Q. And sir, your name?
A. (Mr. Benton) Roscoe Benton

. . .

Q. Mr. and Mrs. Benton, I'm going to show you here a copy of all the papers that have been filed on your behalf in this bankruptcy matter. Do these papers look familiar to you?
A. (Mr. Benton) Yes.
A. (Mrs. Benton) Yes.
Q. Right here I'm going to show you the petition. It has your names on it right there?
A. (Mr. Benton) Yes.
A. (Mrs. Benton) Okay.
Q. There's a signature line right here. Sir - - and your attorney has the original of that. Sir, can you identify your signature there?
A. (Mr. Benton) Yes.
Q. And ma'am, can you identify your signature?
A. (Mrs. Benton) Yes.
Q. And when you signed those papers, did you sign a number of other pages as well?
A. (Mr. Benton) Yes.
A. (Mrs. Benton) Yes.
Q. And when you signed those pages, were you indicating by signing that you had reviewed the information in those pages?
A. (Mr. Benton) Yes.
A. (Mrs. Benton) Yes.
Q. And that that information was true and correct to the best of your knowledge?
A. (Mr. Benton) Yes.
A. (Mrs. Benton) Yes.
Q. Are there changes to that information since the day you signed?

3

> A. (Mr. Benton) No.
> A. (Mrs. Benton) No.
>
> . . .
>
> Q. Okay. All right. I'm going to show you here the schedule regarding current income. I'm circling an employer and address, sir. Is that your current employer and the current address?
> A. (Mr. Benton) Yes.
> Q. Ma'am, is that your current employer and correct address?
> A. (Mrs. Benton) Yes.

Because the Chapter 13 Trustee was satisfied with the responses of the Debtors at their first meeting of creditors, the Motion to Dismiss was withdrawn on January 27, 2010. Afterward, the Chapter 13 Trustee and a creditor, AmeriCredit Financial Services, Inc., objected to the Debtors' Chapter 13 Plan and the Court held an evidentiary hearing regarding the objection by AmeriCredit on May 25, 2010. After the conclusion of the evidentiary hearing, the Court entered a bench opinion on June 4, 2010, and the Debtors were able to amend their Chapter 13 Plan such that the Court confirmed their Chapter 13 Plan on June 10, 2010. After the Court confirmed the Debtors' Chapter 13 Plan, the Debtors objected to the claim of the Internal Revenue Service, but that objection was withdrawn on October 1, 2010.

Over one year after the original Chapter 13 Petition was filed, the Debtors completed their financial management course and a Certification of Completion was filed with the Court on March 21, 2011. Subsequently, the Chapter 13 Trustee filed a Motion to Dismiss on August 3, 2011, and the Debtors responded to that Motion to Dismiss on August 12, 2011. After Mr. Benton consulted with Mr. Sefcovic, the Debtors elected to convert their Chapter 13 case to Chapter 7 on October 17, 2011. As a result of this conversion, the Debtors filed a Chapter 7 Statement of Current Monthly

4

Income and Means Test Calculation and Cover Sheet for Amendments to Schedules on October 18, 2011. On November 10, 2011, Chapter 7 Trustee, Samuel Sweet, held a first meeting of creditors. Relevant portions of that transcript include:

You folks raise your right hands, please.

> ROSCOE AND DESI BENTON, DEBTORS, SWORN

> BY THE TRUSTEE:
> Q. Sir, would you state your full name for the record.
> A. (Mr. Benton) Roscoe Benton III.
> Q. Ma'am, would you state your full name for the record.
> A. (Mrs. Benton) Desi Benton.
> Q. Did you folks have an opportunity to read and review the bankruptcy schedules before you signed them?
> A. (Mr. Benton) Yes.
> A. (Mrs. Benton) Yes.
> Q. Did you find them to be a true and accurate reflection of your financial condition at the time you signed them?
> A. (Mr. Benton) Yes.
> Q. Did you list all your assets, liabilities and other financial transactions as required?
> A. (Mr. Benton) Yes.
> A. (Mrs. Benton) Yes.

Although Trustee Sweet originally closed the Debtors' case because he did not find assets to administer, he became aware of assets and filed a Withdrawal of Trustee's No Asset Report on December 15, 2011, and began investigation into the Debtors' assets and financial affairs. A Federal Rules of Bankruptcy Procedure 2004 Exam was ordered in January of 2012, compelling the Debtors to appear and answer additional questions regarding their assets. Subsequently, Trustee Sweet filed an adversary proceeding naming Ms. Benton as a defendant seeking the denial of her discharge pursuant to 11 U.S.C. § 727. This Complaint, filed on May 30, 2012, stated in the first paragraph:

> On December 14, 2009, Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 with her spouse, Roscoe Benton, III (collectively referred to as "Debtor").

5

In her Answer to the Complaint, Ms. Benton stated in response to this allegation:

> Admit

In paragraph 7 of the Complaint, Trustee Sweet alleged:

> Pursuant to the Debtor's initially filed Statement of Financial Affairs ("SOFA"), the Debtor, under oath, asserted that she owned personal property with a value of $6,000 and no real property.

In response, Ms. Benton stated:

> Neither admit nor deny, the documents speak for themselves.

In paragraph 9, Trustee Sweet alleged:

> The Debtors received lottery winnings prior to the filing of the Chapter 13 bankruptcy petition that was not disclosed.

In response, Ms. Benton stated:

> Admit to having lottery winnings in 2007, which were disclosed on line one of Debtors Statement of Financial Affairs as part of "Debtor (wife) 2007 income".

In paragraph 11, Trustee Sweet alleged:

> Debtor failed to disclose her interest, whether it be in the form of legal and or equitable title in that real estate, failed to list that interest in Schedule A, Schedule B or the initial Statement of Financial Affairs, any amendments thereto filed with the Court and that omission was reaffirmed at the 341 hearing when the Debtor testified that the Petition and Schedules were accurate.

In response, Ms. Benton stated:

> Deny that Debtors had an obligation to amend documents that accurately reflected their financial situation at that time of filing.

As a result of this adversary proceeding, Ms. Benton was denied a discharge. From 2012-2014, the Chapter 7 Trustee and the Debtors engaged in a series of maneuvers to resolve potential issues raised by the Debtors' failure to fully or accurately disclose their assets or financial affairs.

6

Despite these efforts, however, the Debtors were ultimately required to surrender possession of their then existing home at 5260 Fairway Trail, Grand Blanc, Michigan and move to another home. The Chapter 7 Trustee sold their home and the Court ordered that certain payments be made to the Debtors to allow them to relocate.

On February 19, 2014, the Debtors were indicted in the District Court for the Eastern District of Michigan, Southern Division. The District Court held a trial on November 18 and 19, 2014, and the jury returned a verdict as follows:

COUNT ONE: Bankruptcy Fraud

As to Count One of the indictment, we, the jury, by unanimous verdict, find:

| | | |
|---|---|---|
| ROSCOE BENTON, III | Not Guilty ✓ | Guilty __ |
| DESI NAJUANA BENTON | Not Guilty ✓ | Guilty __ |

COUNT TWO: Bankruptcy Fraud

As to Count Two of the indictment, we, the jury, by unanimous verdict, find:

| | | |
|---|---|---|
| ROSCOE BENTON, III | Not Guilty __ | Guilty ✓ |
| DESI NAJUANA BENTON | Not Guilty ✓ | Guilty __ |

COUNT THREE: Mail Fraud

As to Count Three of the indictment, we, the jury, by unanimous verdict, find:

| | | |
|---|---|---|
| ROSCOE BENTON, III | Not Guilty __ | Guilty ✓ |
| DESI NAJUANA BENTON | Not Guilty __ | Guilty ✓ |

COUNT FOUR: Bankruptcy Fraud

As to Count Four of the indictment, we, the jury, by unanimous verdict, find:

| | | |
|---|---|---|
| ROSCOE BENTON, III | Not Guilty __ | Guilty ✓ |
| DESI NAJUANA BENTON | Not Guilty __ | Guilty ✓ |

COUNT FIVE: Bankruptcy Fraud

7

09-36642-dof   Doc 463   Filed 02/12/16   Entered 02/12/16 09:33:44   Page 7 of 20

As to Count Five of the indictment, we, the jury, by unanimous verdict, find:

| ROSCOE BENTON, III | Not Guilty ___ | Guilty ✓ |
| DESI NAJUANA BENTON | Not Guilty ___ | Guilty ✓ |

After their trial, the Debtors filed an Emergency Motion for an Order Directing Trustee to Pay to Debtors the Funds From the Sale of 5260 Fairway Trail. In that Motion, the Debtors alleged in paragraph 1:

1. That Debtors filed for chapter 13 protection on or about December 14, 2009.

The Court denied the relief requested by the Debtors.

A few days later, the Debtors filed an Emergency Motion Requesting that the Debtors Chapter 7 Case Be Reverted Back to a Chapter 13 and Relinquishment of Monies Being Held By Trustee. In that Motion, the Debtors state:

1. That the Benton's [sic] filed for chapter 13 on or about December 14, 2009.
2. That the Debtors Chapter 13 was illegally converted to a chapter 7 on or about October 17, 2011.
3. That the Debtors never gave permission verbally or written to have their chapter 13 converted to a chapter 7.
. . .
6. That the Debtors never signed a petition to convert their chapter 13 to a chapter 7.

The Court denied this Motion of the Debtors as well. During this same time, affidavits of the Debtors were filed with the Court that were supposedly signed by each Debtor. At the evidentiary hearings, however, Mr. Benton admitted that some affidavits were not signed by Ms. Benton, but instead by another female.

In March of 2015, the Debtors retained another attorney. After much investigation, the Debtors filed the instant motions and seek to have their case voided or, in the alternative, dismissed nunc pro tunc. The Court heard testimony from various attorneys who formally represented the Debtors, including Mr. Sefcovic, Melissa DiGiamberdine, and Alan Walton. Another attorney,

Todd Nye, testified that he received a number of files from Mr. Sefcovic when he retired, but that none of the files that Mr. Nye received contained the original signature of the Debtors. Mr. Nye also testified that the files he did receive from Mr. Sefcovic were disorganized. The Court also received the testimony of Barbara Foley, the attorney for the Chapter 13 Trustee during the Debtors' Chapter 13 case, who is now a Chapter 13 Trustee for the Western District of Michigan. The Court also received testimony from both Mr. and Ms. Benton.

Mr. Sefcovic testified that the person who picked up the files from him and delivered them to Mr. Nye did so in an open trailer, with the suggestion that perhaps certain papers flew out in transit from Mr. Sefcovic's office to Mr. Nye's office. Although not directly stated at the evidentiary hearing, the Court notes that Mr. Sefcovic filed a Chapter 7 Petition seeking relief with this Court on February 10, 2015, and was granted a discharge, essentially removing any obligations he may owe to Mr. and Ms. Benton. Mr. Sefcovic testified that he did see the original "wet ink" signatures of the Bentons on both the Petition and various other papers, such as the Declaration Concerning Debtors' Schedules and Statement of Financial Affairs. Per Mr. Sefcovic, he witnessed the signing of some of these documents in his office as early as December 8, 2009, but did not see the signing of other documents. Mr. Sefcovic also testified that since this was a Chapter 13 proceeding, Ms. DiGiamberdine, his associate at the time, would have been the individual in charge of handling the matter in Court and, in fact, it appears that many of the papers initially filed on behalf of the Debtors were filed by Ms. DiGiamberdine or under her direction. Mr. Sefcovic also testified that after Ms. DiGiamberdine left his employment and the Debtors were having trouble in their Chapter 13, he advised them regarding their rights to continue in Chapter 13 or convert to Chapter 7 and that he believed that conversion to Chapter 7 was the appropriate procedure. He therefore converted the Debtors to Chapter 7.

9

Mr. Walton testified that he was contacted by Mr. Sefcovic, who at the time was suffering from cancer, regarding the adversary proceeding brought by the Chapter 7 Trustee against Ms. Benton. Mr. Walton thought that he could perhaps work out an arrangement with the Chapter 7 Trustee, but his efforts failed. At no time did Mr. Walton see original "wet ink" signatures, even though Mr. Sefcovic testified that he thought Mr. Walton had Mr. Sefcovic's file.

Ms. DiGiamberdine testified regarding her handling of the Chapter 13 and, in particular, the first meeting of creditors conducted by Ms. Foley. Per Ms. DiGiamberdine, Ms. Foley would point out to the Debtors their signatures and ask for affirmation that signature appeared on the Petition. Ms. Foley, in contrast, does not have such a specific memory of either the Debtors or of her protocol during this time, but did indicate that she would point out to the Debtors various documents, including the Petition, Schedules, Statement of Financial Affairs.

Ms. Benton testified that she was informed by her husband that they needed to file bankruptcy and she accompanied her husband to Mr. Sefcovic's office on December 8, 2009. She recalls meeting with Mr. Sefcovic and going over their various options and that they concluded that Chapter 13 was their best solution. At various times during her testimony, Ms. Benton equivocated between not recalling if she signed the Petition and Declarations Concerning Debtors' Schedules and Statement of Financial Affairs, and not signing such.

Mr. Benton testified and denied signing any Petition or Declaration Concerning Debtors' Schedules and Statement of Financial Affairs. Both Mr. and Ms. Benton testified, however, that they believed they needed Chapter 13 relief with this Court and assumed that Mr. Sefcovic, and by extension, Ms. DiGiamberdine, represented their interests.

To complete the statement of facts, the Court also notes that the Debtors signed an Affidavit in Support of Motion to Void Case stating:

Roscoe Benton III and Desi N. Benton, being duly sworn, depose and say:

1.  That the within Chapter 13 Petition was filed either by Henry J. Sefcovic or Melissa DiGiamberdine on December 14, 2009.
2.  That we met with Henry J. Sefcovic for the filing of the case prior to that date at his office in Bay City.
. . .
4.  That at no time were we required to sign the documents to be filed with the Bankruptcy Court to commence the within case.
5.  That at no time did we authorize either attorney to sign any documents on our behalf.
6.  That at no time did we authorize either attorney to electronically forge our signatures.
7.  That at no time did we sign any of the documents necessary to commence the bankruptcy case, in particular those identified in docket entry number 1 of the court's docket report attached hereto.
8.  That, in particular, we never signed page 3 of the voluntary petition requesting relief in accordance with the chapter of tile 11, United States Code, specified in this petition as attached hereto.
9.  That at no time did we sign any document purporting to convert the case to a chapter 7, in particular, docket entry 68 "Notice of Voluntary Conversion From Chapter 13 to Chapter 7" as attached hereto.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). All matters raised by the motions are based on Title 11 of the United States Code and are therefore within the jurisdiction of this Court.

## Analysis

The Debtors seek the extraordinary relief of the voiding of their bankruptcy case that was filed over six years ago in 2009. Their theory is that they did not authorize Mr. Sefcovic to file the Chapter 13 Petition, did not authorize him to sign any papers, electronically or otherwise, on their behalf, and that the failure of anyone to produce their original "wet ink" signatures is grounds to

11

void this case.  Alternatively, Debtors ask this Court to strike their Schedules A-J and Summary of Schedules filed on December 22, 2009, filed at Docket No. 12, and dismiss their case nunc pro tunc pursuant to 11 U.S.C. § 521(i)(1) as of the 46th day of the filing of the bankruptcy.  The Court denies the Debtors' Motion for the following reasons.

<u>There is no statute or rule providing for the remedy requested by the Debtors.</u>

At the December 8, 2015, closing argument, Debtors' counsel requested that this Court follow the statute.  The Court inquired as to what statute the Debtors wanted the Court to follow and Debtors' counsel could not supply such a statute.  At least two statutes are applicable, namely 11 U.S.C. §§ 301 and 302, which read in pertinent part:

> 11 U.S.C. § 301 - Voluntary Cases
>
>   (a) A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.
>   (b) The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.
>
> 11 U.S.C. § 302 - Joint Cases
>
>   (a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse.  The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.
>   (b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

A clear and plain reading of both statutes indicates that a case is commenced by the filing of a petition.  Neither statute requires or states that the petition must be signed by the debtor or debtors, as the case may be.  Seeing no statutory mandate in the Bankruptcy Code itself, the Federal Rules of Bankruptcy Procedure perhaps have such a requirement.  The possible pertinent rules

12

include:

> Rule 1002. Commencement of Case
>
>  (a) Petition. A petition commencing a case under the Code shall be filed with the clerk.
>  (b) Transmission to United States Trustee. The clerk shall forthwith transmit to the United States trustee a copy of the petition filed pursuant to subdivision (a) of this rule.
>
> Rule 1008. Verification of Petitions and Accompanying Papers
>
>  All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.
>
> Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers
>
>  (a) Signature. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

Of these Rules, Rule 9011(a) is the most specific in that that Rule requires that a petition be signed by at least one attorney of record, unless the party is not represented by an attorney. In that instance, the unrepresented person must sign all papers. Again, none of the Rules found by the Court support the Debtors' contention that they have to sign a petition.

The Court's own ECF Procedures, however, supports Debtors' position.

ECF Procedure 10 Retention Requirements

>  (a) Retention of a Paper with an Original Signature. Each Paper that must contain an original signature by a person other than the Filer or User, or that is required to be verified under Rule 1008 or as provided in 28 U.S.C. §1746 by a person other than the Filer or User, shall be filed electronically by a Filer or a User. The Paper containing the original signature shall be retained by the Filer or User who files the Paper for five years after the closing of the case or adversary proceeding. This

13

retention does not affect or replace any other retention period required by other applicable laws or rules.

   (b) Sanctions; Production of Original Papers. Failure to maintain a Paper for the specified period shall subject the Filer or User to sanctions, including disgorgement of fees. On request of the Court or any party in interest, the Filer or User shall provide the original Paper for review.

In turn, 28 U.S.C. § 1746, as referenced in Procedure 10, as well as Rule 1008, states:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed with the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

With all of this, the Court notes that the strongest authority for the Debtors, namely Procedure 10, has its own built in remedy in that disgorgement of fees is appropriate. Procedure 10 states as much and, as importantly, does not provide for additional remedies as the Court may deem appropriate.

After close review of the applicable statutes and rules, the Court concludes that to the extent the Debtors needed to sign their Petition, the remedy for the failure to provide an original "wet ink" signature is disgorgement, not the voiding or dismissal of a case.

<u>The failure to produce an original "wet ink" signature has evidentiary, but not substantive effect.</u>

14

Procedure 10 is designed to have a straightforward evidentiary path to show that a party authorized an attorney to file a paper. The concept is straightforward: an attorney prepares a paper, reviews that paper with the client, the client authorizes the filing of the paper by signing the paper, and the attorney files the paper. This procedure protects both the attorney and the client as there is no question as to the nature of the paper filed with the Court. By producing the original "wet ink" signature, both the attorney and the client are protected.

Procedure 10 also addresses the issue of when an original "wet ink" signature is not available. The procedure does not suggest that the document was improperly filed or is inaccurate, but instead penalizes the one party charged with the safe keeping of that document, namely the attorney.

Seeing that this evidentiary rule has not been followed, in that Mr. Sefcovic has not and cannot produce the original "wet ink" signature of the Debtors, the Court will not summarily void or dismiss any action resulting from a paper that may have been inappropriately filed. Instead, the Court notes that the evidentiary presumption in favor of the appropriateness of the paper is now in question and may be subject to attack and, if appropriate, the striking of that paper or the voiding or dismissal of a case.

<u>The facts of this case do not support voiding</u>

This case started when the Chapter 13 Petition was filed on December 14, 2009. From that date until March of 2015, the Debtors did not object to being within this Court's jurisdiction. As was testified at the evidentiary hearings, the Debtors believed they needed relief from this Court and that relief was granted. On numerous occasions, the Debtors requested affirmative relief from this Court and in many instances obtained that relief, such as when their Chapter 13 Plan was confirmed.

15

09-36642-dof    Doc 463    Filed 02/12/16    Entered 02/12/16 09:33:44    Page 15 of 20

Moreover, the Debtors on numerous occasions either admitted that they filed a Chapter 13 Petition on December 14, 2009, or affirmatively stated that such a Petition was filed. Perhaps even more noteworthy, the Debtors in January of 2015, and February of 2015, after they were indicted, tried, and convicted of various federal crimes, reiterated to this Court that such a Petition was filed. In fact, as late as January 26, 2015, the Debtors, in their Motion requesting conversion back to Chapter 13, stated that they did not sign the pleading to convert their case from Chapter 13 to Chapter 7, but stated that they did file for Chapter 13 on or about December 14, 2009. Although Debtors' counsel may very well be right in that many debtors are unable to understand that there are many differences regarding nuances in the Bankruptcy Code, the Debtors in this case demonstrated as late as January of 2015, that they understood the difference between signing a document, authorizing a document, and not signing a document. If Debtors are to be believed that they did not sign their Petition in December of 2009, then they could have stated such on January 26, 2015. Instead, they reaffirmed, again, that they had filed a Chapter 13 Petition.[1]

There are numerous entries in this case and many actions in Court, many of which involved both Mr. and Ms. Benton. Until March of 2015, neither Mr. or Ms. Benton suggested or implied to this Court that they believed they were in the Court improperly. A review of their actions in this Court, including the taking of the budget and credit counseling and the financial management courses all indicate that the Debtors were well aware that they were in Bankruptcy Court and that they were there on their own volition.

Moreover, the Debtors' actions in 2015, suggest to the Court that neither Debtor followed

---

[1] The Court has carefully reviewed various pleadings filed either by the Debtors or on behalf of the Debtors from December of 2009 through January of 2015. On numerous occasions, including their sworn testimony at their January 26, 2010, First Meeting of Creditors, the Debtors have either affirmatively stated that they had filed their Chapter 13 Petition or admitted filing such a Petition.

16

the rules and procedures requiring the actual signing of a document. As testified by Mr. Benton, he filed documents in early 2015 that required the signature of Ms. Benton. Instead of having Ms. Benton sign these documents, he had another individual sign the documents for her. The Court finds this testimony to be very damaging to Mr. Benton's credibility and, by some extension, Ms. Benton's. Also, the Court cannot ignore the direct testimony by both Mr. and Ms. Benton at their Chapter 13 first meeting of creditors and their Chapter 7 first meeting of creditors. First, both Mr. and Ms. Benton must have been notified that they had to appear in Flint, Michigan to attend a first meeting of creditors. If they had not authorized or signed the appropriate papers, they should have questioned either Mr. Sefcovic or Ms. DiGiamberdine about those papers. Second, and especially in regard to the Chapter 13 first meeting of creditors in July of 2010, the questions are direct and the answers just as direct. From this testimony, the Debtors confirm that they signed each paper and that those papers were true and accurate.

The Court also carefully observed the demeanor of all witnesses at the evidentiary hearings in September and October of 2015. In many regards, the Court cannot fault the testimony of Ms. Foley, Mr. Walton, or Ms. DiGiamberdine because of the passage of time and their limited involvement in the case, as well as the volume of cases handled by each individual. The Court found their testimony to be credible, as well as the testimony of Mr. Nye.

As for Mr. Sefcovic, his testimony was less credible, but sufficient for the Court to give his testimony weight, especially when the remaining circumstances of this case are considered. While the Court does not condone, and in fact condemns, the procedures utilized by Mr. Sefcovic regarding the intake of information and the retention of documents, the Court finds his testimony to be sufficiently trustworthy. Also, the bankruptcy discharge granted to Mr. Sefcovic removes any financial impact that would prompt him to testify as he did. At this stage of the proceedings, Mr.

Sefcovic has nothing to gain or lose.

As for Mr. and Ms. Benton, the Court found Ms. Benton more credible than Mr. Benton. The Court believed many of Ms. Benton's initial responses to be accurate in that she was not as involved in the bankruptcy proceedings as her husband, Mr. Benton. Many of her initial answers were that she did not recall signing various documents, but she solidified her statements upon cross examination by the United States Trustee.

Mr. Benton's testimony, however, is severely damaged by his actions in having documents filed with this Court that were not signed by his wife. Additionally, Mr. Benton, who seems to be more of the driving force in this bankruptcy, stated on numerous occasions that a Chapter 13 Petition was filed and, by implication, signed by him. These inconsistent statements must result in the conclusion that Mr. Benton is not credible. Finally, the Court must take note that Mr. Benton, and to a lesser extent Ms. Benton, had much to gain to have this Court conclude that their bankruptcy should be dismissed or voided. If that were to occur, the Bentons could perhaps argue that their criminal conviction should be set aside. If so, that is a decision for the United States District Court for the Eastern District of Michigan to make and not this Court.

<u>The doctrine of laches precludes the relief requested by the Debtors.</u>

This case has been pending for over six years. The Debtors have entered this Court a number of times requesting relief under the Bankruptcy Code, paid substantial sums to the Chapter 13 Trustee, and then had substantial sums received by the Chapter 7 Trustee, all with an eye to pay their creditors. Unlike cases cited by the Debtors where there is a case of stolen identity or a mistake that was discovered shortly after a case was filed, here, this case has not only been pending for six years, but the Debtors have been actively involved as Debtors from December of 2009 through February of 2015. *See, e.g., In re Scotto*, 2010 WL 1688743 (Bankr. E.D.N.Y. Apr. 26, 2010); *In re Woods*

2007 WL 1306427 (Bankr. W.D.Mo. May 1, 2007); and *In re Dick*, 2006 WL 6544157 (Bankr. N.D.Tex. May 19, 2006). This is not the type of case where relief should be accorded to the Debtors because of a mistake. Rather, this is the type of case in which the conduct of the Debtors ratifies their bankruptcy repeatedly. Too much time and too much effort has been expended to void this case and then send the parties away to sort out the resulting chaos.

The doctrine of laches precludes the alternative relief requested by Debtors. "Laches is the 'negligent and unintentional failure to protect one's rights.'" *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991). Debtors argue their bankruptcy should be dismissed nunc pro tunc to the 46th day following their bankruptcy filing because their Schedules were deficient due to a missing Declaration Concerning Debtor's Schedules. Specifically, Debtors argue that their case should have been automatically dismissed for not filing valid schedules supported by a contemporaneous Declaration within 45 days of case filing. The facts of this case fit squarely within the definition of laches.

Moreover, procedural defects under 11 U.S.C. § 521, do not require an automatic dismissal, as such is discretionary with the Court. *Simon v. Amir*, 436 B.R 1 (B.A.P. 6th Cir. 2010). Debtors amended their Schedules, either in whole or in part, at least eight times, affirming such amendments under penalty of perjury each time, the last amendment having been made to their Schedules I and J on November 20, 2014, at Docket No. 311. Nunc pro tunc dismissal is not warranted because of the numerous subsequent amendments to schedules made by Debtors, as well as their conduct throughout the case at hearings and in pleadings in support of the various positions Debtors have taken in their bankruptcy case. Thus, in this Court's discretion, an automatic dismissal was not required under the facts existing on the 46th day following the December 14, 2009 bankruptcy filing. Further, the doctrine of laches strengthens such a conclusion based upon Debtors' conduct for the

19

over five years since.

Conclusion

For the reasons stated in this Opinion, the Court denies the Debtors' Motion to Void Bankruptcy Case and Denies Debtors' Supplemental Motion to Strike Schedules A-J and Summary of Schedules Filed on December 22, 2009, and to Determine Bankruptcy Case is Dismissed Nunc Pro Tunc Pursuant to 11 U.S.C. § 521(i)(1). Counsel for the Chapter 7 Trustee is requested to prepare an order consistent with this Opinion and the presentment of order procedures of this Court.

**Signed on February 12, 2016**

```
                    /s/ Daniel S. Opperman
            Daniel S. Opperman
            United States Bankruptcy Judge
```